UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREEDOM OF THE PRESS FOUNDATION
and KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY,

                                    Plaintiffs,

            - against -                                              No. 17 Civ. 9343 (JGK)

DEPARTMENT OF JUSTICE, NATIONAL
SECURITY AGENCY, CENTRAL
INTELLIGENCE AGENCY, and OFFICE
OF THE DIRECTOR OF NATIONAL
INTELLIGENCE,

                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2768
Facsimile:  (212) 637-2702
Email:       stephen.cha-kim@usdoj.gov

*Attorney for Defendants*

STEPHEN CHA-KIM
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................2

    A.    Procedural History and Plaintiffs' Operative Request...........................................2

    B.    The Government's Production of Records and Remaining Issues in Dispute.........3

ARGUMENT .............................................................................................................................5

    A.    Summary Judgment May Be Granted on the Basis of Defendants' Good-Faith
        Declarations ..........................................................................................................5

    B.    The Government Properly Applied the Relevant Exemptions ...............................6

        1.    The FBI Properly Applied Exemption 1 .....................................................7

        2.    The FBI Properly Applied Exemption 3 .....................................................9

        3.    The DOJ Criminal Division Properly Applied Exemption 5....................10

        4.    The FBI Properly Invoked Exemption 7(E)...............................................11

    C.    The FBI Conducted an Adequate Search for Records Requested Under
        Section 1(e) of the Final Processing List, and the Agency Need Not Disclose
        If It Relied on 5 U.S.C. § 552 (C) ........................................................................16

    D.    All Reasonably Segregable Portions of Records Were Produced ........................18

CONCLUSION.........................................................................................................................19

i

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE**

*A. Michael's Piano Inc. v. Fed. Trade Comm'n,*
   18 F.3d 138 (2d Cir. 1994) .......................................................................... 9

*ACLU v. DOJ,*
   681 F.3d 61 (2d Cir. 2012) ........................................................................... 9

*ACLU v. U.S. Dep't of,Def.,*
   628 F.3d 612 (D.C. Cir. 2011) ...................................................................... 7

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.,*
   626 F.3d 678, 681 (2d Cir. 2010) .......................................................... 12, 15

*Assadi v. U.S. Dep't of State,*
   No. 12 Civ. 1111 (LLS), 2014 WL 4704840 (S.D.N.Y. Sept. 22, 2014) ................... 6

*Azmy v. U.S. Dep't of Def.,*
   562 F. Supp. 2d 590 (S.D.N.Y. 2008) ........................................................... 9

*Bigwood v. U.S. Dep't of Def.,*
   132 F. Supp. 3d 124 (D.D.C. 2015) .............................................................. 9

*Bishop v. Dep't of Homeland Sec.,*
   45 F. Supp. 3d 380 (S.D.N.Y. 2014) ........................................................... 12

*Blackwell v. FBI,*
   646 F.3d 37 (D.C. Cir. 2011) ................................................................ 13, 15

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dep't of Homeland Sec.,*
   331 F. Supp. 3d 74 (S.D.N.Y. 2018) ...................................................... 14, 15

*Carney v. DOJ,*
   19 F.3d 807 (2d Cir. 1994) ........................................................................ 5, 6

*CIA v, Sims,*
   471 U.S. 159 (1985) ............................................................................... 9, 10

*Diamond v. FBI,*
   707 F.2d 75 (2d Cir. 1983) .......................................................................... 7

*Doherty v. DOJ,*
   775 F.2d 49 (2d Cir. 1985) ......................................................................... 12

*Gatson v. FBI*,
   Civ. No. 15-5068, 2017 WL 3783696 (D.N.J. Aug. 31, 2017) .................................................. 13

*Grand Cent. P'ship, Inc. v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999) ...................................................................... 5, 10, 11, 16

*Halperin v. CIA*,
   629 F.2d 144 (D.C. Cir. 1980) .......................................................................................... 7

*Hopkins v. U.S. Dep't of Housing & Urban Dev.*,
   929 F.2d 81 (2d Cir. 1991) .............................................................................................. 10

*In re Grand Jury Subpoena, Judith Miller*,
   438 F.3d 1141 (D.C. Cir. 2006) ...................................................................................... 11

*Jett v. FBI*,
   139 F. Supp. 3d 352 (D.D.C. 2015) ............................................................................... 15

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ..................................................................................................... 5, 6

*Keys v. DOJ*,
   830 F.2d 337 (D.C. Cir. 1987) ....................................................................................... 12

*Light v. DOJ*,
   968 F. Supp. 2d 11 (D.D.C. 2013) ........................................................................... 13, 17

*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ..................................................................................... 13

*Maynard v. CIA*,
   986 F.2d 547 (1st Cir. 1993) .......................................................................................... 16

*Mobley v. CIA*,
   924 F. Supp. 2d 24 (D.D.C. 2013) ................................................................................ 17

*Muttitt v. Dep't of State*,
   926 F. Supp. 2d 284 (D.D.C. 2013) ................................................................................ 9

*N.Y. Civil Liberties Union v. Dep't of Homeland Sec.*,
   771 F. Supp. 2d 289 (S.D.N.Y. 2011) ........................................................................... 12

*N.Y. Times Co. v. DOJ*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ............................................................................. 6

*Nat'l Council of La Raza v. DOJ,*
    411 F.3d 350 (2d Cir. 2005) ................................................................. 10

*Nat'l Sec. Archive Fund, Inc. v. CIA,*
    402 F. Supp. 2d 211 (D.D.C. 2005) ...................................................... 18

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ............................................................................... 5

*Poitras v. Dep't of Homeland Sec.,*
    303 F. Supp. 3d 136 (D.D.C. 2018) ................................................ 13, 14

*Reporters Comm. for Freedom of the Press v. FBI,*
    236 F. Supp. 3d 268 (D.D.C. 2017) ................................................ 14, 15

*Sack v. Dep't of Def.,*
    823 F.3d 687 (D.C. Cir. 2016) .............................................................. 11

*Schrecker v. DOJ,*
    217 F. Supp. 2d 29 (D.D.C. 2002) ....................................................... 16

*Shapiro v. DOJ,*
    78 F. Supp. 3d 508 (D.D.C. 2015) ....................................................... 13

*Shapiro v. DOJ,*
    393 F. Supp. 3d 111 (D.D.C. 2019) ..................................................... 15

*Steinberg v. DOJ,*
    Civ. No. 93-2409, 1997 WL 349997 (D.D.C. June 18, 1997) ............... 17

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) ............................................................ 18

*Thelen v. DOJ,*
    169 F. Supp. 3d 128 (D.D.C. 2016) ..................................................... 13

*Tigue v. DOJ,*
    312 F.3d 70 (2d Cir. 2002) ................................................................... 11

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) ................................................................ 6

*Wilner v. NSA,*
    592 F.3d 60 (2d Cir. 2009) ............................................................ 6, 7, 9

*Wolf v. CIA,*
 473 F.3d 370 (D.C. Cir. 2007) ............................................................... 7, 10

**STATUTES, REGULATIONS, EXECUTIVE ORDERS, AND RULES**

Freedom of Information Act,
 5 U.S.C. § 552 ...................................................................................... 1

5 U.S.C. § 552(a) .................................................................................. 5

5 U.S.C. § 552(a)(3)(C) ......................................................................... 6

5 U.S.C. § 552(a)(4)(B) ......................................................................... 6

5 U.S.C. § 552(b) .................................................................................. 5, 18

5 U.S.C. § 552(b)(1) .............................................................................. 1, 7

5 U.S.C. § 552(b)(3) .............................................................................. 1, 9

5 U.S.C. § 552(b)(5) .............................................................................. 1, 10

5 U.S.C. § 552(b)(7)(A)-(F) .................................................................... 11

5 U.S.C. § 552(b)(7)(E) .......................................................................... 1, 12

5 U.S.C. § 552(b)(9) .............................................................................. 5, 18

5 U.S.C. § 552(c) ................................................................................... 16

5 U.S.C. § 552(c)(1) .............................................................................. 17

5 U.S.C. § 552(c)(2) .............................................................................. 17

50 U.S.C. § 3024(i)(1) ........................................................................... 9

28 C.F.R. § 50.10 ................................................................................. 10, 11

Executive Order 13,526 ........................................................................ 7, 8

Fed. R. Civ. P. 56(a) ............................................................................. 6

Defendants the Department of Justice ("DOJ"), National Security Agency ("NSA"),

Central Intelligence Agency ("CIA"), and Office of the Director of National Intelligence

("ODNI") (collectively the "Government"), by and through their attorney, Geoffrey S. Berman,

United States Attorney for the Southern District of New York, respectfully submit this

memorandum of law in support of their motion for summary judgment in this action brought

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

This case arises out of a FOIA request made to the Defendant agencies, as amended

during the course of the litigation (the "Request"), by Plaintiffs Freedom of the Press Foundation

("Freedom of the Press") and the Knight First Amendment Institute at Columbia University

("Knight Institute"), seeking records concerning First Amendment-related "limitations on

investigative activities" and surveillance programs that impact the news media. Compl. [Dkt. No.

1] ¶ 20. According to Plaintiffs' complaint, Freedom of the Press is a California non-profit

organization that advocates "for government transparency and accountability" under the First

Amendment, while the New York-based non-profit Knight Institute "works to preserve and

expand the freedoms of speech and the press." *Id*. ¶¶ 12-13.

 Each of the Defendant agencies has conducted reasonable searches in response to the

Request and the Government has released thousands of pages of responsive documents. The

Government has also withheld in full and redacted in part additional documents, consistent with

*inter alia* FOIA Exemptions 1, 3, 5, and 7(E), 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(7)(E).

Plaintiffs challenge only a small subset of those withholdings.

As set forth below, Defendants have conducted thorough searches, appropriately

segregated responsive material, and withheld only those materials that fall within valid

exemptions to disclosure. Accordingly, the Court should grant summary judgment in favor of the Defendant agencies.

## **BACKGROUND**

### A.  Procedural History and Plaintiffs' Operative Request

On or around October 10, 2017, Plaintiffs submitted their initial Request, seeking the following records, for the time period of May 1, 2013, to March 22, 2018:

> (1) all documents concerning any limitations on investigative activities, including the use of law enforcement and national security investigative authorities, to target, acquire, retain, disseminate, or use records or information of or about members of the news media;
>
> (2) all documents concerning the limitations imposed upon any of the government's investigative authorities by the First Amendment; and
>
> (3) all portions of the current FBI DIOG that discuss any limitations on any investigative activities, including the use of law enforcement and national security investigative authorities, to target, acquire, retain, disseminate, or use records or information of or about members of the news media, and/or any other limitations on those investigative activities imposed by the First Amendment.

Compl. ¶ 20. On November 29, 2017, Plaintiffs commenced the present action.

After negotiations between the parties, Plaintiffs agreed to a narrowed and clarified scope of the Request, which the Court entered on March 22, 2018. *See* Final Processing List, attached as Ex. A to Stipulation and Order Regarding Document Searches and Processing [Dkt. No. 26]. The now modified Request for documents, among other things, more specifically defined (1) "law enforcement investigative authorities" to mean "warrants; subpoenas (grand jury, administrative, or trial); and court orders issued under the Stored Communications Act, Pen Register Act, and Wiretap Act," and (2) "national security investigative authorities" as "National Security Letters ("NSLs"); 'exigent letters'; delayed-notice warrants; and [Foreign Intelligence

Surveillance Act] orders and directives." *Id*. It also specified that Plaintiffs were seeking "[a]ll targeting, minimization, and/or other procedures that were adopted by the FBI, NSA, CIA and the National Counterterrorism Center" regarding the use of such investigative authorities "to obtain records or information of or about members of the news media." *Id*. In addition, the Final Processing List sought certain Office of Inspector General reports and documents concerning requests for approval to issue NSLs, as well as documents concerning the Privacy Protection Act and limitations on "investigative authorities" under various statutes, and related portions of the current FBI Domestic Investigations and Operations Guide. *Id*. The term "Documents" was defined to encompass only formal versions of the types of record at issue. *Id*. Finally, the Final Processing List specified that in addition to the other named Defendant agencies, the following DOJ components would conduct searches according to the negotiated terms: the Office of Legal Counsel, the Office of Information Policy, the National Security Division, the Criminal Division, and the Federal Bureau of Investigation ("FBI"). *See id*.

### B.  The Government's Production of Records and Remaining Issues in Dispute

On July 24, 2018, the Court entered a schedule for the Government to process and produce nonexempt responsive records in accordance with the terms of the Final Processing List. *See* Memo Endorsement [Dkt. No. 28]. The Defendant agencies subsequently completed their processing of the voluminous potentially responsive documents, and then engaged in discussions with Plaintiffs to provide requested information about certain withholdings and issues. *See, e.g.*, Joint Letter dated May 20, 2019 [Dkt. No. 30]; Status Reports dated Aug. 6, 2019 [Dkt. No. 35], and Nov. 7, 2019 [Dkt. No. 41]. As relevant to the Defendant agencies whose determinations remain under challenge by Plaintiffs: the FBI reviewed 1,064 pages of records, releasing 506 pages in full or in part over three interim productions on August 31, September 28, and October 31, 2018, Declaration of Michael G. Seidel ("Seidel Decl.") ¶¶ 9-11; and the DOJ Criminal

Division reviewed approximately 10,630 pages of records (of which nearly 5,000 pages were not responsive) and released in full or part 69 pages over interim productions on October 1, October 31, November 30, and December 21, 2018, and February 22, 2019, Declaration of Gail Brodfuehrer ("Brodfuehrer Decl.") ¶ 10.[1]

On November 6, 2019, Plaintiffs provided counsel for the Defendant agencies a list of the withholdings and related issues that they intended to challenge. *See* Exh. A to Declaration of Stephen Cha-Kim ("Cha-Kim Decl."). As relevant to the present motion, on January 14, 2020, the Criminal Division made a subsequent interim production of two additional pages identified by Plaintiffs. Brodfuehrer Decl. ¶ 14. After the parties' continued conferral, on January 22, 2020, Plaintiffs provided a final amended list of withholdings that they continue to challenge in this case: withholdings on approximately 40 pages of FBI records under Exemptions 1, 3, and 7, and withholdings on two pages of DOJ Criminal Division records under Exemption 5. *See* Exh. B to Cha-Kim Decl.[2] Plaintiffs also contest (1) the adequacy of the FBI's search with respect to one narrow category of documents, as well as the FBI's possible reliance on a statutory exception to FOIA related to certain law enforcement records, and (2) whether the FBI and DOJ Criminal Division properly segregated responsive information. *Id.*

---

[1] During the course of the litigation, the DOJ Criminal Division also provided a number of draft indices to Plaintiffs with information regarding its withholding determinations. Brodfuehrer Decl. ¶¶ 11-13.

[2] Accordingly, the Government does not address in detail the specifics of the processing, production, and withholding of records by the other Defendant agencies, the CIA, the NSA, and the ODNI, which should be dismissed from the action.

## ARGUMENT

Congress's purpose in enacting FOIA was "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-147 at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). To that end, FOIA generally requires federal agencies to make records and other materials "available to the public," 5 U.S.C. § 552(a), on the basis of an adequate search "reasonably calculated to discover the requested documents," *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The Government must also ensure that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9).

However, FOIA specifically exempts nine categories of information from public disclosure. *See id.* § 552(b). These exemptions from mandatory disclosure were carved out "in order to protect specified confidentiality and privacy interests." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220-21 (1978). In this action, Plaintiffs challenge the Government's application of exemptions protecting classified national security-related information, records prohibited from release by statute, documents that would reveal agency officials' deliberative processes, and sensitive law enforcement-related material.

For the reasons set forth below, the Government has conducted appropriate searches, properly applied the relevant exemptions, and reasonably segregated responsive information.

### A.  Summary Judgment May Be Granted on the Basis of Defendants' Good-Faith Declarations

As a threshold matter, actions brought under FOIA are generally resolved by summary judgment. *See, e.g., Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is

warranted if a movant shows "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, courts consider

two issues: whether the agency has made "reasonable efforts to search for the records" requested,

5 U.S.C. § 552(a)(3)(C), and, if an agency's search locates records responsive to a request,

whether the agency has properly withheld records or information under any of FOIA's

exemptions, *id.* § 552(a)(4)(B). *See, e.g.*, *Carney*, 19 F.3d at 812. "Affidavits or declarations

supplying facts indicating that the agency has conducted a thorough search and giving

reasonably detailed explanations why any withheld documents fall within an exemption are

sufficient to sustain the agency's burden." *Id.* (footnote omitted).[3] Moreover, an agency's

declarations in support of its determinations are accorded a presumption of good faith. *See, e.g.*,

*Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).

### B.  The Government Properly Applied the Relevant Exemptions

The Government properly applied relevant exemptions to disclosure in making the

challenged withholdings. The FOIA exemptions, each established by Congress in light of a

compelling countervailing interest to disclosure, are "intended to have meaningful reach and

application." *John Doe Agency*, 493 U.S. at 152. Here, the relevant Defendant agencies have

invoked a number of exemptions under FOIA: Exemptions 1, 3, 5, 6, and 7(E). The factual basis

for an agency's withholdings is typically put forward in declarations by agency personnel, *see*

*Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), to enable a court to decide whether the

exemptions were justified. *See, e.g.*, *Carney*, 19 F.3d at 812; *Assadi v. U.S. Dep't of State*, No.

12 Civ. 1111 (LLS), 2014 WL 4704840, at *2 (S.D.N.Y. Sept. 22, 2014). "[A]n agency's

---

[3] For that reason, the Government has not submitted a Local Rule 56.1 statement. *See N.Y. Times*

*Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).

justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (citation and internal quotation marks omitted). The Defendant agencies at issue, through their respective declarants, have satisfied this standard for each of the asserted exemptions.

### 1.   The FBI Properly Applied Exemption 1

Exemption 1 protects records that are "specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 552(b)(1). In addressing agencies' responses to requests for such documents, courts repeatedly have recognized "the uniquely executive purview of national security" and "the relative competencies of the executive and judiciary," and, accordingly, "have consistently deferred to executive affidavits predicting harm to the national security." *Wilner*, 592 F.3d at 76 (internal quotation marks omitted); *see also Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *Diamond v. FBI*, 707 F.2d 75, 79 (2d Cir. 1983). In this context, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). Consequently, the Government's burden "is a light one," and "plausible" and "logical" arguments for nondisclosure should be sustained. *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011).

Executive Order ("EO") 13,526 currently governs the classification and protection of national security information. EO 13,526, § 6.1(cc) (defining "National Security" as "the national defense or foreign relations of the United States"). For information to be governed by this order, it must be: properly owned by the Government, classified by a duly authorized

individual, and fall into certain categories (including intelligence activities, foreign activities, vulnerabilities and capabilities of national security systems); the original classification authority must also determine that its unauthorized disclosure could be expected to lead to damage to national security. *Id.* § 1.1(a). So long as the information is handled in accordance with certain administrative requirements, such as proper marking and handling, it falls under the ambit of the order, and thus also Exemption 1. *See, e.g.*, *id.* §§ 1.5(b), 1.7.

The FBI properly invoked Exemption 1 to withhold information on three pages of records released in part, to protect information concerning intelligence activities and sensitive information related to foreign relations and foreign activities. The FBI's declaration lays out how the relevant original classification authority independently examined the applicable documents, before applying this exemption to material that satisfied the substantive and administrative requirements of EO 13,526 and that was properly classified at the "Secret" level. *See* Seidel Decl. ¶¶ 29-30. As explained by Michael Seidel, Assistant Section Chief of the FBI's Record/ Information Dissemination Section, the redacted portions on three pages (Bates pages 1052-53, 1067) describe "detailed intelligence activity information gathered or compiled by the FBI on specific individuals or organizations of national security interest." *Id.* ¶ 35. Seidel's assessment, which is entitled to considerable deference, is that under EO 13,526, § 1.4(c), disclosure of this information would reasonably be expected to damage national security by disclosing actual FBI intelligence activities and methods, the agency's related capabilities, and the circumstances and details surrounding the use of said activities. *Id.* Seidel further describes how information on Bates page 1052-53 also falls under EO 13,526, § 1.4(d), by detailing intelligence activity in a foreign country, disclosure of which could not only jeopardize the effectiveness of that activity and the safety of cooperative sources, but also harm foreign relations and make the United States

vulnerable to foreign retaliation. *Id.* ¶¶ 36-37. Given the adverse consequence that would result

from disclosure of these pages, as articulated by Seidel, the agency's determination not to release

them under Exemption 1 is justified. *See, e.g.*, *ACLU v. DOJ*, 681 F.3d 61, 71 (2d Cir. 2012);

*Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 148-9 (D.D.C. 2015); *Muttitt v. Dep't of*

*State*, 926 F. Supp. 2d 284, 300 (D.D.C. 2013); *Azmy v. U.S. Dep't of Def.*, 562 F. Supp. 2d 590,

600 (S.D.N.Y. 2008).

### 2.   The FBI Properly Applied Exemption 3

Exemption 3 protects records "specifically exempted from disclosure by statute." 5

U.S.C. § 552(b)(3). In weighing the validity of this exemption, a court must first consider

whether the statute identified by the agency is in fact a withholding statute, and then whether the

withheld material satisfies that statute's criteria. *See CIA v, Sims*, 471 U.S. 159, 167 (1985); *A.*

*Michael's Piano Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 143 (2d Cir. 1994). "Exemption 3

differs from other FOIA exemptions in that its applicability depends less on the detailed factual

contents of specific documents; the sole issue for decision is the existence of a relevant statute

and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72

(internal quotation marks omitted).

Under Exemption 3, the FBI withheld information on four pages (Bates 1052-54, 1067)

pursuant to the National Security Act, as amended by the Intelligence Reform and Terrorism

Prevention Act of 2004. Seidel Decl. ¶¶ 39-42. This statute directs the Director of National

Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50

U.S.C. § 3024(i)(1). Three pages of the relevant redactions were concurrently protected under

Exemption 1 because, as explained above, they would reveal details about intelligence methods

and are thus protected by the statute. Seidel Decl. ¶ 42. The fourth redacted page also contains

information revealing the use of concrete intelligence sources and methods, specifically as used as part of a law enforcement technique. *Id*. Accordingly, as it is established that the National Security Act is an Exemption 3-withholding statute, and release of the information in question would unlawfully disclose intelligence sources and methods in violation of the statute, the redactions were proper. *See Sims*, 471 U.S. at 181; *see also Wolf*, 473 F.3d at 378.

### 3.   The DOJ Criminal Division Properly Applied Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." *See* 5 U.S.C. § 552(b)(5). With this exemption, "Congress specifically had in mind . . . the deliberative process or executive privilege, which protects the decision[-]making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) (internal quotation marks omitted). An agency document "may be withheld pursuant to the deliberative process privilege if it is: (1) 'predecisional,' *i.e.*, 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.*, 'actually related to the process by which policies are formulated.'" *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356 (2d Cir. 2005) (citing *Grand Cent. P'ship*, 166 F.3d at 482) (alteration omitted).

Here, the DOJ Criminal Division withheld a one-page record in full and a portion of another page pursuant to Exemption 5. Brodfuehrer Decl. ¶ 14. As explained by the agency's declarant, the records in question are "internal agency guidelines relating to requests for authorization to use certain law enforcement tools pursuant to [28 C.F.R. § 50.10]" with respect to members of the news media, as used by the agency's Policy and Statutory Enforcement Unit. *Id*. ¶ 20. Section 50.10 sets forth DOJ's "[p]olicy regarding obtaining information from, or

records of," as well as "questioning, arresting, or charging[,] members of the news media." 28

C.F.R. § 50.10; *see also In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C.

Cir. 2006) ("The guidelines . . . exist to guide the Department's exercise of its discretion in

determining whether and when to seek the issuance of subpoenas to reporters . . . ."). The records

in question consist of internal recommendations about interim steps in the Section 50.10

authorization process: the record withheld in full is a PowerPoint presentation containing

hypothetical scenarios that may arise in the context of Section 50.10 authorization decisions; the

record withheld in part contains recommendations about relevant legal analyses for DOJ

attorneys to consider in determining whether to make certain consultation requests to the

Criminal Division under Section 50.10. *See* Brodfuehrer Decl. ¶¶ 16-17. As such, these records

fall into the category of "'recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer,'" in this case meant to

assist DOJ officials as they "'exercise . . . policy-oriented judgment'" in making decisions about

the applicability and use of law enforcement tools in news media matters consistent with Section

50.10. *Tigue v. DOJ*, 312 F.3d 70, 80 (2d Cir. 2002) (quoting *Grand Cent. P'ship*, 166 F.3d at

482). Accordingly, these records were properly withheld as pre-decisional and deliberative in

nature under Exemption 5.

### 4.   The FBI Properly Invoked Exemption 7(E)

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes" where disclosure would result in one of six enumerated harms set forth in

5 U.S.C. § 552(b)(7)(A)-(F). "Exemption 7 uses the term 'law enforcement' to describe 'the act

of enforcing the law, both civil and criminal.'" *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C.

Cir. 2016). "Law enforcement" in this context extends to the Government's national security

efforts. *See, e.g.*, *id.* (reports about polygraph use met Exemption 7 threshold because they "assist law enforcement agencies in taking 'proactive steps' to deter illegal activity and ensure national security").

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes," release of which "[1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To show that information is "compiled for law enforcement purposes," the Government need only demonstrate a "nexus between the agency's activity . . . and its law enforcement duties." *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987). The first clause of Exemption 7(E) provides categorical protection to information that would disclose law enforcement "techniques and procedures," without requiring any showing of harm as a result of disclosure. 5 U.S.C. § 552(b)(7)(E).[4] "[T]he qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'" *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010).

---

[4] Notwithstanding the lack of need to make such a showing, courts have recognized that the risk of harm in revealing such techniques, which are "not generally known to the public," is well established. *Doherty v. DOJ*, 775 F.2d 49, 52 & n.4 (2d Cir. 1985); *see also Bishop v. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 391 (S.D.N.Y. 2014) (noting applicability where "the disclosure of additional details could reduce . . . effectiveness" of techniques); *accord N.Y. Civil Liberties Union v. Dep't of Homeland Sec.*, 771 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2011).

Courts "set[] a relatively low bar for the agency to justify withholding" under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). An agency does not have "a highly specific burden of showing how the law will be circumvented," but only must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quotation marks and alterations omitted).

The FBI withheld information on 40 pages of records pursuant to several well-recognized categories of materials protected by Exemption 7(E), withholdings which the agency declarant properly explained and which are consistent with settled law. First, in conjunction with Exemption 3, two internal FBI case file numbers were redacted on Bates page 1054. Seidel Decl. ¶ 50. These numbers follow a convention that identifies a specific intelligence activity, source or method, target of interest, and/or investigative priority—knowledge of which could enable law enforcement targets to adapt their behavior to avoid detection or apprehension. *Id*. As such, courts have recognized that such numbers may be withheld. *See Thelen v. DOJ*, 169 F. Supp. 3d 128, 142 (D.D.C. 2016); *Shapiro v. DOJ*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015). The FBI also made a number of discrete redactions on two additional pages, Bates pages 406 and 1054, of internal intra-agency DOJ email addresses and non-public web addresses. Seidel Decl. ¶ 51. Such information is also routinely protected under Exemption 7(E). *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018); *Gatson v. FBI*, Civ. No. 15-5068, 2017 WL 3783696, at *14 (D.N.J. Aug. 31, 2017). So too are the names, numbers, and/or alpha designators of sensitive FBI squads and units. *See Light v. DOJ*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013). This information was therefore properly withheld on Bates pages 1016, 1018-20, and 1052, because the existence of these squads and units is not publicly known or, in the case of one

such redaction, even if known, the unit's association with a particular type of investigation is not. Seidel Decl. ¶ 56.

Next, the FBI redacted information related directly to the agency's methodologies and strategies on specific types of investigations, found on training materials and policy documents. Seidel Decl. ¶ 52. Specifically, the redactions on Bates pages 12, 34-35, 40, 905, 909, and 1033-1034 include specific scenarios, hypothetical situations, and recommended responses, used to disseminate the FBI's "playbook" of law enforcement strategies in different types of cases related to the news media. *Id.* Disclosure of these carefully determined examples would "reveal sensitive strategic decisions made by the FBI," including "the FBI's level of focus on certain types of law enforcement or intelligence gathering efforts." *Poitras*, 303 F. Supp. 3d at 159 (quoting FBI declaration); *see also Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 99 (S.D.N.Y. 2018) (upholding application of Exemption 7(E) to material that would reveal FBI's "strategic developmental planning and implementation mechanisms, research, and training" with respect to specific initiative).

The FBI also withheld information from the non-public portions of agency directives found in operations guides, as the redacted information consists of procedures to be taken by law enforcement personnel in various circumstances, such as interviewing members of the news media who may be suspected of having committed an offense. Seidel Decl. ¶ 54 (citing Bates pages 377-378, 383-384, 387-389, 394, 396, 406-407, 410-417, 421, and 1016-1020). Similarly, the redactions on Bates pages 1052-53 and 1066-67 relate to FBI procedures and practices for officials implementing the agency's media policy in the law enforcement context and determining when and whether to issue NSLs. *Id.* ¶ 52. Such information falls squarely within the ambit of Exemption 7(E) law enforcement "techniques and procedures." *See*

14

*Reporters Comm. for Freedom of the Press v. FBI*, 236 F. Supp. 3d 268, 279 (D.D.C. 2017);

*Brennan Center*, 331 F. Supp. 3d at 99; *Allard*, 626 F.3d at 681-82.

Also redacted were discrete references, on Bates pages 903 and 914, to certain "cyber products" used as digital investigative tools, not only by FBI personnel but by other federal, state, and local law enforcement agencies as well, to develop leads and to obtain counterterrorism and other investigative data. Seidel Decl. ¶ 53. This information, including references to the specific capabilities and limitations of these digital products, is not available to the general public, *id.*, and public disclosure of such details, particularly about the uses and limits of these tools, would provide "criminals . . . insight into the available tools and resources the FBI [and its law enforcement partners] uses to conduct criminal investigations." *Shapiro v. DOJ*, 393 F. Supp. 3d 111, 120 (D.D.C. 2019) (citation and internal quotation marks omitted).

Finally, the FBI redacted a number of discrete fields on Bates pages 1017, 1020, and 1052-53 which contain direct references to specific law-enforcement techniques employed by the agency, as well as information about prerequisites for their use, internal approval requirements, and their case-specific purposes. Seidel Decl. ¶ 55. As described by the FBI declarant and as a matter of common sense, revealing the fact that the FBI uses certain techniques, and in what circumstances and under what internal procedures, would allow criminal targets to develop countermeasures and compromise the FBI's ability to gather intelligence. *Id.* As such, the information at issue in these redactions clearly consists of investigative techniques that are protected from disclosure under Exemption 7(E). *See, e.g.*, *Jett v. FBI*, 139 F. Supp. 3d 352, 364 (D.D.C. 2015); *Blackwell*, 646 F.3d at 42.

**C. The FBI Conducted an Adequate Search for Records Requested Under Section 1(e) of the Final Processing List, and the Agency Need Not Disclose If It Relied on 5 U.S.C. § 552(c)**

Plaintiffs challenge the FBI's determination that there were no records responsive to the discrete category of documents included in Section (1)(e) of the Final Processing List, which covers "requests or statistical information concerning requests for approval to issue NSLs" related to the news media. *See* Ex. A to Stipulation and Order [Dkt. No. 26]. Specifically, Plaintiffs contest the adequacy of the agency's search as to this category and its "possible reliance on § 552(c)" of FOIA to make the non-responsiveness determination. *See* Exh. B to Cha-Kim Decl. Plaintiffs' challenge is meritless.

To begin with, cognizant of the narrow subject matter encompassed by the category of request at issue, the FBI directly engaged an agency attorney who is an NSL expert and the agency's designated point of contact for NSL matters, providing the attorney with the precise terms of the Final Processing List. Seidel Decl. ¶ 19. This individual as well as others identified within the agency who would have the requisite knowledge were unable to identify any responsive records. *Id*. Given the inability of a general database search to identify the documents sought, this process was "reasonably calculated to discover" all of the responsive documents in the agency's possession. *Grand Cent. P'ship*, 166 F.3d at 489 (search "need not be perfect, but rather need only be reasonable"); *see also Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003). Accordingly, because Plaintiffs cannot "rebut the agency's affidavit . . . by showing that the agency's search was not made in good faith," *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993), the FBI has met its burden of establishing that it conducted an adequate search.

Next, although Plaintiffs take issue with the outcome of the FBI's search to the extent that it relied on § 552(c), that provision provides no basis to question the agency's determination.

16

Section 552(c) "permits agencies to treat records as not subject to the requirements of the FOIA" in certain circumstances, including when a "request involves access to records or information compiled for law enforcement purposes" and such records:

> (1) could reasonably be expected to interfere with enforcement proceedings, (2) the investigation or proceeding involves a possible violation of criminal law, (3) there is reason to believe that the subject of the investigation or proceeding is not aware of its pendency, and (4) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings.

*Mobley v. CIA*, 924 F. Supp. 2d 24, 71-72 (D.D.C. 2013) (quoting 5 U.S.C. § 552(c)(1)) (internal quotation marks omitted). It also permits agencies to "treat . . . records as not subject to the requirements" of FOIA where the request implicates "informant records maintained by a criminal law enforcement agency." 5 U.S.C. § 552(c)(2). Thus, § 552(c) "provides an 'exclusion,' and not merely an 'exemption' from FOIA." *Light*, 968 F. Supp. 2d at 30. The distinction is an important one, as "[a]n 'exclusion' is different from an exemption in that the Government need not even acknowledge the existence of excluded information." *Steinberg v. DOJ*, Civ. No. 93-2409, 1997 WL 349997, at *1 (D.D.C. June 18, 1997).

As such, the provision represents a "narrow and specific statutory authority for criminal law enforcement agencies to act on the princip[le] that an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exemption.'" *Light*, 968 F. Supp. 2d at 30 (citation and internal quotation marks omitted). Accordingly, the FBI need not confirm or deny whether it relied on § 552(c) in making its responsiveness determination with respect to § (1)(e) of the Final Processing List.[5]

---

[5] Should the Court so request, the FBI will file an *in camera* declaration addressing this issue.

### D.  All Reasonably Segregable Portions of Records Were Produced

FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). This provision does not require disclosure of records in which the non-exempt information that remains is "incomplete" or "meaningless." *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005). The FBI and the DOJ Criminal Division satisfied the requirements of § 552(b)(9).

Their declarants have explained that their respective agencies carefully reviewed responsive documents to determine whether all reasonably segregable portions were identified and released, taking into account the nature of the records at issue. *See* Brodfuehrer Decl. ¶ 22 (explaining that News Media Policy presentation was scrutinized to ensure only applicable slides were withheld and that only deliberative portion of relevant consultation form was redacted); Seidel Decl. ¶ 58 (noting materials were subject to secondary review for any additional information that could be released). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted). Here, because Plaintiffs offer no basis to rebut that presumption in light of the agencies' explanations, the Court should find that all "reasonably segregable portion[s]" of the responsive records have been provided to Plaintiffs. *See* 5 U.S.C. § 552(b).

18

## **CONCLUSION**

For the reasons stated herein, the Government's motion for summary judgment should

be granted in its entirety.

Dated:   New York, New York
            January 23, 2020

                                     Respectfully submitted,

                                     GEOFFREY S. BERMAN
                                     United States Attorney for the
                                     Southern District of New York

                                     *Attorney for Defendants*

                 By:   /s/ Stephen Cha-Kim                         
                       STEPHEN CHA-KIM
                       Assistant United States Attorney
                       86 Chambers Street, Third Floor
                       New York, New York  10007
                       Telephone:  (212) 637-2768
                       Facsimile:  (212) 637-2702
                       E-mail: stephen.cha-kim@usdoj.gov