IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| FREEDOM OF THE PRESS FOUNDATION, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 1:17-cv-09343-JGK |
| DEPARTMENT OF JUSTICE, et al. | ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Assistant Section Chief ("ASC") of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Winchester, Virginia and, in the absence of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS. I have held this position since June 26, 2016. I joined the FBI in September 2011, and prior to my current position, I was the Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to

1

September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney registered in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise approximately 242 FBI employees, supported by approximately 71 contractors, who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities as Acting Section Chief also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA. The Section Chief, RIDS has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. Accordingly, when serving in the position of the Section Chief, RIDS in the absence of the incumbent, I assume the designated original classification and declassification authority. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiff's request for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiffs' FOIA request for records concerning the restrictions imposed by statute, regulation, or the First Amendment on government surveillance targeting members of the news media or otherwise implicating the freedoms of speech, association, or the press.[1]

## ADMINISTRATIVE HISTORY OF PLAINTIFFS' REQUEST

(4)  By letter dated October 10, 2017, Plaintiffs submitted a FOIA request to the FBI seeking any and all records concerning restrictions on government surveillance targeting members of the news media or otherwise implicating the First Amendment.[2] Plaintiffs requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and a waiver of search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Plaintiff Freedom of the Press Foundation advised they should be considered a "representative of the news media" within the meaning of FOIA. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Plaintiff Knight First Amendment Institute advised it qualified as an "educational…institution" whose purpose was "scholarly…research". 5 U.S.C. § 552(a)(4)(A)(ii)(II). *See* **Exhibit A.**

(5)  By letter dated November 2, 2017, the FBI acknowledged receipt of Plaintiffs' FOIA request and assigned it FOIA Request No. 1388236-000. Plaintiffs were advised that for purpose of assessing fees, the FBI determined them to be an educational institution and/or representative of the news media and they would be charged applicable duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II). The FBI also informed Plaintiffs their request for a public interest fee waiver was under consideration and they would be advised of a decision at a later date. Plaintiffs were further informed they could file an appeal of the FBI's

---

[1] *See* ECF No. 1, Plaintiffs' Complaint for Injunctive Relief, ¶ 1.
[2] The specific details of the request letter are not included here because the request was subsequently modified by agreement dated March 22, 2018. *See* ¶ 8, *infra*.

determination with the DOJ Office of Information Policy ("OIP") within ninety days of the date

of the letter, could seek dispute resolution with the Office of Government Information Services

("OGIS"), or could contact the FBI's FOIA Public Liaison with questions. *See* **Exhibit B.**

(6)      By letter dated November 7, 2017, the FBI advised Plaintiffs their request for

expedited processing was approved pursuant to 28 C.F.R. § 16.5(e)(1)(ii). *See* **Exhibit C.**

(7)      On November 29, 2017, the Plaintiffs filed the instant lawsuit. *See* **ECF No. 1.**

(8)      After a period of negotiation discussions, Plaintiffs agreed to narrow and clarify

the scope of the FOIA request. A Stipulation and Order Regarding Document Searches and

Processing ("final processing list") was entered on March 22, 2018. Specifically, Plaintiffs

requested the following categories of documents:

> a.     All Documents concerning limitations imposed by policy, regulation, statute, or the Free Speech Clauses of the First Amendment on the use of law enforcement and national security investigative authorities to target, acquire, retain, disseminate, or use records or information of or about members of the news media. The term "law enforcement investigative authorities" means warrants, subpoenas (grand jury, administrative, or trial); and court orders issued under the Stored Communications Act, Pen Register Act, and Wiretap Act.[3] The term "national security investigative authorities" means National Security Letters ("NSLs"); "exigent letters"; delayed-notice warrants; and orders and directives issued under the Foreign Intelligence Surveillance Act ("FISA"), as amended.

> b.     All documents concerning the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa, and/or DOJ's Media Guidelines, 28 C.F.R. § 50.10.

> c.     All targeting, minimization, and/or other procedures that were adopted by FBI, NSA, CIA, and/or the National Counterterrorism Center ("NCTC") regarding the use of law enforcement and/or national security investigative authorities to obtain records or information of or about members of the news media.

> d.     All reports by the NSA Office of Inspector General and/or the CIA Office of Inspector General regarding the use of law enforcement and/or national

---

[3] With respect to the Wiretap Act, the definition of Documents in Paragraph 2(a) shall exclude Paragraph 2(a)(vi).

security investigative authorities to obtain records or information of or about members of the news media.

e.    All requests or statistical information concerning requests for approval to issue NSLs for the acquisition of records or information of or about members of the news media, submitted to:

      i.    the Assistant Attorney General for National Security, DOJ, and/or any of the following FBI officials:  the Deputy Director, Executive Assistant Director, and Associate Executive Assistant Director for the National Security Branch; Assistant Directors and Deputy Assistant Directors for the Counterterrorism, Counterintelligence, and Cyber Divisions, and the Weapons of Mass Destruction Directorate; the General Counsel; and the Deputy General Counsel for the National Security Law Branch; or

      ii.    pursuant to section G.12 of Appendix G of the current version of the FBI Domestic Investigations and Operations Guide ("DIOG").

f.    All Documents concerning the limitations imposed by the First Amendment upon government investigative authorities relating to the following statutes or other provisions:

      i.      5 U.S.C. § 552a(e)(7);
      ii.     12 U.S.C. § 3414(a)(5)(A);
      iii.    15 U.S.C. § 1681u(a)-(c);
      iv.    18 U.S.C. § 2709(b);
      v.      50 U.S.C. § 1805(a)(2)(A);
      vi.     50 U.S.C. § 1824(a)(2)(A);
      vii.    50 U.S.C. § 1842(a)(1), (c)(2);
      viii.   50 U.S.C. § 1843(a), (b)(1);
      ix.     50 U.S.C. § 1861(a)(2)(B); and
      x.      80 Fed. Reg. 9,355, at 9,356.

g.    All portions of the current version of the FBI DIOG that discuss any limitations on any investigative activities, including the use of law enforcement and national security investigative authorities, to target, acquire, retain, disseminate, or use records or information of or about members of the news media, and/or any other limitations on those investigative activities imposed by the First Amendment, including but not limited to all sections of the current FBI DIOG that update or otherwise correspond to the following portions of the version of the FBI DIOG dated October 15, 2011:

      i.    Appendices G and Q; and

ii.    Sections 2.84, 3.3.1.3-3.3.1.4, 3.5-3.6, 4.1-4.2, 4.4.4, 5.1, 5.3, 5.6.3.4.4.1, 5.7.1, 6.3, 6.10.1, 7.3, 7.10.1, 8.3, 8.8.1, 9.3, 9.10.1, 10.1.2.2.5, 10.1.3, 10.2.3, 16.1.3, 16.2.3, 16.2.3.5, 16.3.1.4.2, 16.3.1.5.3, 16.9.3, 18.2, 18.5.6.1, 18.5.6.4.8, 18.6.4.3.4.3, 18.6.5.3.5.1, 18.6.6.3.4, 18.6.6.3.7.4, 18.6.8.4.2.7, 18.6.9.5.1.1, and 19.10.

*See* **ECF No. 26.**

(9)    By letter dated August 31, 2018, the FBI made its first interim release of records to the Plaintiffs. The FBI reviewed 508 pages, releasing 255 pages in full or part. Information was withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). Plaintiffs were further informed they could file an appeal of the FBI's determination with DOJ OIP within ninety days of the date of the letter, could seek dispute resolution with OGIS, or could contact the FBI's FOIA Public Liaison with questions. *See* **Exhibit D.**

(10)    By letter dated September 28, 2018, the FBI made its second interim release of records to the Plaintiffs. The FBI reviewed 500 pages, releasing 201 pages in full or part. Information was withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). Plaintiffs were advised they could file an appeal of the FBI's determination with the DOJ OIP within ninety days of the date of the letter or could seek dispute resolution with OGIS. Plaintiffs were also advised they could contact the AUSA assigned to this case if they had questions. *See* **Exhibit E.**

(11)    By letter dated October 31, 2018, the FBI made its third interim release to the Plaintiffs. The FBI reviewed 56 pages, releasing 50 pages in full or part. Information was withheld pursuant to FOIA Exemptions 1, 3, 6, 7(C), and 7(E). Plaintiffs were also advised that the FBI had received a referral of three pages from OIP for direct response to the Plaintiffs and that response was included in the release. Plaintiffs were again advised they could contact the AUSA assigned to this case if they had questions. *See* **Exhibit F.**

(12)     By letter dated July 12, 2019, the FBI advised the Plaintiffs that in response to specific inquiries they made concerning part 1.e of the Final Processing List (D.E. 26, Exhibit A), a search was conducted and no records responsive to this portion of the request were located. Plaintiffs were directed to contact the Attorney for the Government with any additional inquiries about the matter and that this was the FBI's final response to the FOIA request. *See* **Exhibit G.**

## THE CENTRAL RECORDS SYSTEM

(13)     The Central Records System ("CRS") is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI Field Offices, and FBI Legal Attaché Offices ("Legats") worldwide.

(14)     The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin ("OO") initiating the file, and (c) the assigned

individual case file number for that particular subject matter.[4] Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order which the document is added to the file, typically in chronological order.

## THE CRS GENERAL INDICES AND INDEXING

(15)   The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS. The CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties. The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval. The entries in the general indices fall into two category types:

   A.   Main entry. A main index entry is a created for each individual or non-individual that is the subject or focus of an investigation. The main (subject) is identified in the title of most documents in the case file.

   B.   Reference entry. A reference index entry is created for individuals or non-individuals associated with the case but not a known subject or focus of an investigation.

(16)   FBI employees may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (e.g., a terrorist attack or bank robbery). Indexing information in the CRS is done at the discretion of FBI investigators

---

[4] For example, in a fictitious file number of "11Z-HQ-56789;" the "11Z" component indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789"is the assigned case specific file number.

when information is deemed of sufficient significance to warrant indexing for future retrieval. Accordingly, the FBI does not index every individual name or other subject matter in the general indices.

(17)     Given that CRS index searches can effectively locate a broad array of FBI records, as standard practice, the FBI normally relies on index searches of the CRS to conduct reasonable searches for records responsive to FOIPA Requests. However, when evaluating Plaintiffs' request, the FBI found the subject matter of Plaintiffs' request resulted in search terms not likely to be indexed within the CRS since information in the CRS is typically indexed by an individual or organization's name or by event title.

## THE FBI'S SEARCHES FOR RESPONSIVE RECORDS

(18)     Plaintiff has indicated it is not challenging the FBI's search, except as to part 1.e of the "final processing list." (ECF 26 at 5.) Accordingly, this declaration will only describe the search for records responsive to part 1.e. of the final processing list, seeking the following:

e.     All requests or statistical information concerning requests for approval to issue NSLs[5] for the acquisition of records or information of or about members of the news media, submitted to:

i.     the Assistant Attorney General for National Security, DOJ, and/or any of the following FBI officials:  the Deputy Director, Executive Assistant Director, and Associate Executive Assistant Director for the National Security Branch; Assistant Directors and Deputy Assistant Directors for the Counterterrorism, Counterintelligence, and Cyber Divisions, and the Weapons of Mass Destruction Directorate; the General Counsel; and the Deputy General Counsel for the National Security Law Branch; or

ii.     pursuant to section G.12 of Appendix G of the current version of the FBI Domestic Investigations and Operations Guide ("DIOG").

---

[5] A National Security Letter ("NSL") is an administrative demand for documents or records relevant to a Predicated Investigation to protect against international terrorism or clandestine intelligence activities. *See:*  DIOG §18.6.6.3.2.

*See* **ECF No. 26.**

(19)    In situations such as this where the subject matter does not lend itself to a standard CRS index search, RIDS' practice is to conduct a more individualized inquiry of specific FBI divisions and offices deemed reasonably likely to possess any potentially responsive records.  In response to part 1.e. of the final processing list, the FBI determined that a Sentinel search was not likely to yield responsive records.  Additionally, while the FBI documents National Security Letter ("NSL") reviews and determinations in its FISA Management System ("FISAMS"), this system does not contain the capability to search for the requested records, namely, requests for NSLs on news media, submitted to certain officials.  Furthermore, the FBI does not track the specific category of NSL requests sought by Plaintiffs, nor does it track any statistical information concerning such NSL requests.  Given the distinctive character of the records requested, FOIA personnel queried an FBI attorney who is an NSL Subject Matter Expert ("SME") within FBI's Office of General Counsel ("OGC"), National Security Cyber Law Branch ("NSCLB"), who was also designated as a point-of-contact within the FBI for NSL matters, for guidance and assistance in attempting to locate any responsive records.  The NSL expert, who is familiar with the NSL process described in part 1.e of the "final processing list," was provided a copy of the search stipulation and final processing list.  Based on his knowledge of the specific types of requests described in part 1.e, the subject matter expert was unable to identify any responsive records.  The subject matter expert provided contact information for those who would have likely possessed or been aware of responsive records, if such records existed.  Those individuals were queried and were likewise unable to identify any responsive records.

## ADEQUACY OF SEARCH

(20)    RIDS, with the assistance of the NSCLB, conducted searches reasonably calculated to locate all records responsive to Part 1.e of the final processing list. The FBI's NSCLB is a branch of OGC and provides legal advice to the entire FBI as needed. Specifically, attorneys within the NSCLB provide legal support to national security and cyber-related policy and legislative initiatives. NSCLB plays a critical role in handling compliance, oversight, and training for FBI on the use of national security-related investigative tools. These attorneys advise FBI employees on counterterrorism, counterintelligence, and cyber matters. They also provide advice on gathering foreign intelligence and the protection and use of that information during national security criminal and civil proceedings. Considering these core missions and responsibilities, RIDS determined this was the FBI office most likely to possess responsive records since they would be the "gatekeepers" of any statistical and/or reporting data concerning the use of NSLs. NSCLB SMEs are knowledgeable on all matters related to the use of NSLs within the FBI.

(21)    NSCLB could locate no records responsive to the request. RIDS confirmed with NSCLB they conducted searches reasonably calculated to locate all responsive records within the offices' possession. RIDS found no indication records were likely to be housed in separate locations; and the NSCLB subject matter experts most familiar with the statistical data and reporting requirements for NSLs and the subject matter of part 1.e of the Plaintiffs' request confirmed, to the best of their knowledge, responsive records were unlikely to be housed elsewhere.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(22)     The FBI processed all documents responsive to Plaintiffs' request to achieve

maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made

to provide Plaintiffs with all material in the public domain and with all reasonably segregable,

non-exempt information.  The FBI did not withhold any reasonably segregable, nonexempt

portions from Plaintiffs.  Further description of the information withheld, beyond what is

provided in this declaration, could identify the actual exempt information protected by the FBI.

The FBI numbered all pages of its production consecutively as "FBI(17cv9343)-1 through

FBI(17cv9343)-1067".  On the pages released in full or in part, these numbers are typically

located at the bottom of each page.  The FBI previously provided the Plaintiffs with an index of

the pages withheld in full; however, Plaintiffs have indicated that those pages are no longer at

issue, except for some specifically designated pages.  Plaintiffs have limited their exemption

challenges to a subset of 52 pages; accordingly, only those challenged records are discussed

herein.

(23)     On the Bates-numbered documents provided to Plaintiffs, the FBI further

categorized its application of Exemptions to better explain the nature of the information withheld

pursuant to the provisions of the FOIA.  Specifically, the FBI applied numerical codes that

coincide with various categories of exempt information.  These coded categories are provided to

aid the Court's and Plaintiffs' review of the FBI's explanations of the FOIA Exemptions it has

asserted to withhold the material.  The coded, Bates-numbered pages together with this

declaration demonstrate that all challenged material withheld by the FBI is exempt from

disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material

that segregation is not possible without revealing the underlying protected material.

(24)     Each challenged instance of information withheld pursuant to a FOIA Exemption

is accompanied by a coded designation that corresponds to the categories listed below.  For

example, if "(b)(3)-1" appears on a document, the "(b)(3)" designation refers to FOIA

Exemption 3 protecting information required to be withheld by statute.  The numerical

designation of "1" following the "(b)(3)" narrows the main category into a more specific

subcategory, such as information required to be withheld pursuant to the "National Security Act

(sources and methods) – 50 U.S.C. § 3024(i)(1)."

(25)     Listed below are the categories used to explain the FOIA Exemptions the FBI

asserted to withhold information on the 52 challenged pages selected by the Plaintiffs:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | | |
|---|---|---|
| CODED CATEGORIES | INFORMATION WITHHELD | Challenged Bates Page Number |
| **Exemption 1** | **Classified Information** | |
| (b)(1)-1 | Information currently classified pursuant to Executive Order ("E.O.") 13,526 | 1052-1053, 1067 |
| **Exemption 3** | **Information Protected by Statute** | |
| (b)(3)-1 | National Security Act (sources and methods) – 50 U.S.C. § 3024(i)(1) | 1052-1053, 1067 |
| **Exemption 7(E)** | **Law Enforcement Techniques and Procedures** | |
| (b)(7)(E)-1 | Sensitive file numbers | 1054 |
| (b)(7)(E)-2 | Internal secure e-mail and intranet web address | 406, 1054 |
| (b)(7)(E)-3 | Investigative methodology & strategy for specific type of investigation, including but not limited to examples, criteria and triggers, as well as capabilities, limitations, and vulnerabilities of those specific strategies. | 12, 34-35, 40, 905[6], 909, 1033-1034, 1052-1053, 1066-1067 |
| (b)(7)(E)-5 | Non-public investigative tools, techniques, databases, database | 903, 914 |

---

[6] Due to a typographical error, this page was inadvertently listed on the page as category (b)(7)(E)-5, but should have been category (b)(7)(E)-3.

| | | |
|---|---|---|
| | printouts, and/or information concerning capabilities or limitations | |
| (b)(7)(E)-6 | Non-public portions of operational directives (specific guidance, procedures, criteria, and/or requirements). | 377-378, 383-384, 387-389, 394, 396, 406-407, 410-417, 421, 1016-1020, 1052-1053 |
| (b)(7)(E)-10 | Law enforcement technique utilized in the specific context of National Security investigations (cited at times in conjunction with exemptions 1 and 3). | 1017, 1020, 1052-1053 |
| (b)(7)(E)-11 | Specialized FBI units or squads, and/or singular roles (including duties and criteria) within the specialized unit/squad. | 1016, 1018-1020, 1052 |

## EXEMPTION 1 – CLASSIFIED INFORMATION

(26)     The FBI's analysis for the withholding of classified information contained in these documents is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552(b)(1). Exemption 1 protects from disclosure those records that are:

    a.     specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and

    b.     are in fact properly classified pursuant to such Executive Order.

(27)     Before I consider an Exemption (b)(1) claim for withholding agency records, I determine whether the information in those records satisfies the requirements of Executive Order ("E.O.") 13526, the E.O. governing the classification and protection of information that affects the national security,  and whether the information complies with the various substantive and procedural criteria of the E.O.  E.O. 13526, signed by President Barack Obama on December 29, 2009, is the E.O. that currently applies to the protection of national security information.  I am bound by the requirements of E.O. 13526 when making classification determinations.

(28)    In order for information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526 § 1.1 (a):

1.    an original classification authority is classifying the information;

2.    the information is owned by, produced by or for, or is under the control of the United States Government;

3.    the information falls within one or more of the categories of information listed in § 1.4 of this order; and

4.    the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage

(29)    As I will explain in further detail below, in my role as an original classification authority, I have determined that the information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified and requires a classification marking at the "Secret" level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage to national security.  See E.O. 13526 § 1.2(a)(2).  In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 13526 must be followed before information can be considered properly classified, such as, proper identification and marking of documents.  In particular, I made certain that all procedural requirements of E.O. 13526 were followed:

1.    each documents was marked as required and stamped with the proper classification designation;

2.    each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O 13526 § 1.5(b);

3.  the prohibitions and limitations on classification specified in E.O. 13526 § 1.7 were adhered to;

4.  the declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were followed; and

5.  any reasonably segregable portions of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

### Findings of the Declarant Regarding Exemption 1

(30)    With the above requirements in mind, I personally and independently examined the FBI information withheld pursuant to Exemption (b)(1). I determined all of the substantive, procedural, and administrative requirements set forth above have been satisfied. As a result, I concluded that the information protected pursuant to Exemption (b)(1) was properly classified, continues to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O. 13526 § 1.4(c) - "intelligence activities (including covert action), intelligence sources or methods, or cryptology" and E.O. 13526 § 1.4 (d) - "foreign relations or foreign activities".

### E.O. 13526, § 1.4(c) – Intelligence Activities, Sources and Methods

(31)    E.O. 13526, § 1.4(c), exempts intelligence activities (including covert action), intelligence sources or methods, or cryptology from disclosure. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method -- and information generated by it -- is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions. Second,

confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved.

(32)    The FBI withheld information pursuant to Exemption 1 to protect intelligence methods utilized by the FBI for gathering intelligence data. This material is classified because its release would reveal actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations and/or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets. The information concerning the intelligence activities or methods is very specific in nature and known to very few individuals.

(33)    It is my determination that disclosure of specific information describing the intelligence activities within the records at issue, and which are still used by the FBI to gather intelligence information in other cases, could reasonably be expected to cause serious damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current intelligence gathering methods used by the FBI; and (2) disclosure would reveal the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities could develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities. This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(34)    The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security.

## Detailed Intelligence Activities

(35)     The FBI withheld classified information on Bates pages 1052-1053, and 1067

concerning detailed intelligence activity information gathered or compiled by the FBI on specific

individuals or organizations of national security interest and/or detailed procedures about the

direction of such intelligence activities.  The disclosure of this information could reasonably be

expected to cause serious damage to the national security, as it would: (a) reveal actual

intelligence activities or methods utilized by the FBI against a specific type of targets; (b)

disclose the intelligence-gathering capabilities of the method; and (c) disclose certain criteria,

triggers, limitations, requirements, and prerequisites that precede use of the technique or method

in specific situations.   This information is properly classified at the "Secret" level pursuant to

E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

## E.O. 13526 § 1.4 (d): Foreign Relations or Foreign Activities

(36)     E.O. 13526, § 1.4 (d) allows for the classification of information related to foreign

relations or foreign activities of the United States, including confidential sources.  The classified

information withheld, if disclosed, would reveal sensitive capabilities and vulnerabilities that

impact the FBI's ability to collect intelligence either about or from a foreign country.  This

information is sensitive due, in part, to the delicate nature of international diplomacy, and must

be handled with care so as not to jeopardize the fragile relationships that exist between the

United States and certain foreign governments.

(37)     Information withheld on Bates page 1052-1053[7] concerning foreign relations or

foreign activities of the United States can reasonably be expected to lead to diplomatic or

---

[7] During my review of Bates pages 1052-1053 and 1067, I determined the classification stamps required correction.  The classification stamps reflect 1.4(d) as applicable to Bates page 1067 and 1.4(c) applicable to all three pages.  The stamps should correctly reflect 1.4(c) is applicable to all

economic retaliation against the United States; identify the targets and scope of intelligence

activities of the United States in or about a foreign country, which may result in the curtailment

or cessation of these activities; enable hostile entities to assess United States intelligence

gathering activities in or about a foreign country and devise countermeasures against these

activities; or compromise cooperative foreign sources, which may jeopardize their safety and

curtail the flow of information from these sources. Release of this information could reasonably

be expected to cause serious damage to national security and is therefore properly classified at

the "Secret" level pursuant to E.O. 13526, § 1.4(d), and is exempt from disclosure pursuant to

Exemption 1.

## EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

(38)     5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute . . . if that statute (A)(i) requires
> that the matters be withheld from the public in such a manner as to leave no
> discretion on the issue; or (A)(ii) establishes particular criteria from withholding
> or refers to particular types of matters to be withheld; and (B) if enacted after the
> date of enactment of the Open FOIA Act of 2009, specifically cites to this
> paragraph.

### (b)(3)-1 - National Security Act of 1947, 50 U.S.C. § 3024 (i)(1)

(39)     The FBI asserted Exemption 3 to withhold information pursuant to Section

102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence

Reform and Terrorism Prevention Act of 2004 ("IRTPA").  50 U.S.C. § 3024(i)(1) provides that

the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure

---

three pages (Bates 1052-1053 and 1067) and 1.4(d) is only applicable to Bates pages 1052-1053
(not Bates 1067).

intelligence sources and methods."[8] As relevant to U.S.C. § 552(b)(3)(B), the National Security

Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009. On its

face, this federal statute leaves no discretion to agencies about withholding from the public

information about intelligence sources and methods. Thus, the protection afforded to intelligence

sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. See *CIA v. Sims*, 471 U.S. 159

(1985).

(40)     In order to fulfill its obligation of protecting intelligence sources and methods, the

DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC")

for the classification of information under applicable laws, Executive Orders, or other

Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. §

3024(i)(1). In implementing this authority, the DNI promulgated Intelligence Community

Directive 700, which provides that IC elements shall protect "national intelligence and

intelligence sources and methods and activities from unauthorized disclosure."[9]     The FBI is one

of 17 member agencies comprising the IC, and as such must protect intelligence sources and

methods.

(41)     Given the plain Congressional mandate to protect the IC's sources and methods of

gathering intelligence, the FBI has determined that intelligence sources and methods would be

revealed if any of the withheld information is disclosed to plaintiffs. Therefore, the FBI is

prohibited from disclosing such information under § 3024 (i)(1). [10]

---

[8] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

[9] Intelligence Community Directive (ICD) 700, date June 7 2012, at ¶ 2a.
[10] Although § 3024 (i)(1) does not impose a requirement to articulate harm, disclosure of this information presents a bona fide opportunity for individuals to develop and implement

(42)    The FBI is asserting Exemption 3 in this case on Bates pages 1052-1053 and 1067

in conjunction with Exemption 1 to protect information that would reveal intelligence sources

and methods. In these instances, information would reveal classified intelligence sources and

methods protected by Exemption 1. In one instance, Bates page 1054, information was protected

under Exemptions 3 and 7(E) because unclassified intelligence sources and methods were

employed as law enforcement techniques, procedures, or guidelines, and thus would qualify as

both an intelligence source and method under Exemption 3 and a law enforcement technique

under Exemption 7(E). Notably, § 3024 (i)(1) protects sources and methods regardless of

whether they are classified. *Sims* at 176.

## EXEMPTION 7 THRESHHOLD

(43)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as

implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM)

and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with

authority and responsibility to investigate all violations of federal law not exclusively assigned to

another agency, to conduct investigations and activities to protect the United States and its

people from terrorism and threats to national security, and further the foreign intelligence

objectives of the United States. Under this investigative authority, the responsive records herein

were compiled and/or created in furtherance of the FBI's law enforcement, national security, and

intelligence missions.

---

countermeasures, resulting in the loss of significant intelligence information, sources, and
methods relied upon by national policymakers and the IC to safeguard national security.

(44)     To accomplish these missions, the FBI must develop policy and training to ensure efficient, effective, and lawful use of specific law enforcement and intelligence gathering techniques, procedures, and/or investigative methods.  Specifically, the records at issue concern policy and training on the restrictions imposed by statute, regulation, or the First Amendment on government surveillance targeting members of the news media or otherwise implicating the freedoms of speech, association, or the press.  In addition, these training and policy documents are intertwined with information concerning certain inherent tasks and operational functions that are required, to include the implementation and operation of law enforcement programs or systems used as law enforcement and/or intelligence gathering methods, tools, techniques, and/or procedures.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(45)     5 U.S.C. § 552(b)(7)(E) provides protection for:

> Law enforcement records which would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to
> risk circumvention of the law.

(46)     Exemption (b)(7)(E) has been asserted to protect information containing sensitive investigatory techniques and procedures authorized for use by the FBI.  This exemption affords categorical protection to these techniques and procedures used in such investigations; it protects techniques and procedures not well-known to the public as well as non-public details about the use of well-known techniques and procedures.  While several documents could easily be characterized as consisting fully of information that would disclose investigative techniques and procedures, and thus would be eligible for protection under (b)(7)(E) in their entirety, the FBI endeavored to release as much segregable information as possible to Plaintiffs.  The release of

additional information would disclose techniques and/or procedures used in law enforcement and national security investigations or prosecutions, or would disclose guidelines for law enforcement and national security investigations or prosecutions that could reasonably be expected to risk circumvention of the law. Although the "circumvention of law" component is not specifically required to justify the withholding of law enforcement techniques and procedures, this harm justification is nonetheless articulated in the 7(E) subcategories below.

(47)    The subset of records selected by Plaintiffs for this motion contain information protected under one or more of the following seven subcategories:

- Sensitive file numbers;

- Internal FBI secure e-mail and intranet web addresses;

- Investigative methodology & strategy for specific type of investigation, including but not limited to examples, criteria and triggers, as well as capabilities, limitations, and vulnerabilities of those specific strategies;

- Non-public investigative tools, techniques, databases, database printouts, and/or information concerning capabilities or limitations;

- Non-public portions of operational directives (specific guidance, procedures, criteria, and/or requirements);

- Law enforcement technique utilized in the specific context of National Security investigations (cited at times in conjunction with exemptions 1 and 3);

- Specialized FBI sections, units or squads, and/or singular roles (including duties and criteria) within the specialized unit/squad;

(48)    These categories explain the basis for applying the exemption to particular information. To describe the protected information in any further detail would identify and

23

highlight the sensitive information the FBI seeks to protect. The revelation of such details could enable the targets of these techniques to develop countermeasures or avoid detection in order to circumvent the FBI's law enforcement efforts.

(49)     The FBI's reasoning for protecting this information cannot be examined in a vacuum, but must be analyzed within the larger context of our country's current national security climate. The FBI is charged with protecting the nation from security risks posed by U.S. and non-U.S. individuals, organizations (such as terrorist groups), and foreign nations that seek harm against the United States. Thus, if specific investigative techniques or procedures are made public, then those individuals, organizations, and terrorist groups can use the information to learn the FBI's tactics in gathering information and can develop countermeasures to avoid detection.

### Sensitive File Numbers

(50)     FOIA Exemption 7(E) was asserted, in conjunction with Exemption b(3), to protect two sensitive FBI case file numbers on Bates page 1054. The file numbers at issue document a specific intelligence activity, source or method, namely the location of two examples of letterhead memos ("LHM") FBI employees can refer to as examples when drafting requests for approval from DOJ. The FBI has determined that this exemption is appropriate for protecting these case file numbers. The release of file numbering convention identifies an intelligence activity, source/method, the investigative interest, or priority given to such matters. Further, disclosing these two case files as an example of where such LHMs can be found would then reveal that the FBI used particular types of techniques in those terrorism/counter-intelligence investigations.[11] It would also show, globally, what types of investigative strategies the FBI uses

---

[11] The FBI considered that this information could have been a lead to documents that were responsive to the request, specifically, part 1.e of the "final processing list." The FBI reviewed these two LHMs and determined they are not responsive to part 1.e. While they are examples of

when investigating certain types of criminal behavior or threats to National Security. Applying a mosaic analysis, suspects could use these file numbers (indicative of investigative priority), in conjunction with other information known about other individuals and/or techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities, *etc*. Thus, the FBI properly protected this information from disclosure pursuant to Coded Category 7(E)-1.

### Internal Secure E-Mail Addresses and Intranet (internal) Web Addresses

(51)     FOIA Exemption 7(E) was asserted to protect secure internal e-mail addresses and non-public web addresses. Release of this type of information could allow individuals under investigation to exploit the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's unclassified but non-public intranet. Such actions could arm individuals with the information or ability to circumvent the law. Additionally, release of this information would allow individuals to disrupt official business and could subject FBI employees to harassing e-mails. Thus, the FBI properly protected this information from disclosure pursuant to Coded Category 7(E)-2 on Bates pages 406 and 1054.

### Investigative Methodology & Strategies for Specific Types of Investigations

(52)     FOIA Exemption 7(E) was asserted to protect details that would reveal non-public investigative methods and specific strategies used in the context of particular types of investigations. Release of this information in the context of policy or training material, including scenarios, hypothetical situations, and recommended responses, would provide insight

---

LHMs seeking approval from DOJ of the use of certain techniques, they are not those implicated by part 1.e of the request.

into the FBI Agent's strategic analysis, including anticipated obstacles and potential hurdles to investigation. Disclosure of this information would essentially reveal the FBI's "playbook" or strategies utilized in specific circumstances and provide criminals and terrorists with valuable information on the FBI's capabilities and vulnerabilities for detecting and combating criminal acts, affording criminals and terrorists the opportunity to develop countermeasures to avoid detection and circumvent the law. Disclosing the FBI's analysis, including the levels of review required in specific investigative situations, would provide insight to criminals and adversaries about what actions they could take to circumvent or hamper the FBI's investigative techniques. This would make use of the investigative technique, method, or strategy ineffective in these situations. The FBI has withheld information pursuant to Coded Category 7(E)-3, at times in conjunction with FOIA Exemptions 1 and 3, on Bates pages 12, 34-35, 40, 905, 909, 1033-1034, 1052-1053, and 1066-1067.

### Information Concerning Capabilities or Limitations and Identity of Certain Non-Public Investigative Tools and Techniques

(53)     The FBI protected the identity of, and the capabilities and limitations (including restrictions) related to, the use of certain non-public investigative tools and the techniques by which they are utilized (including any results). They are used for official law enforcement purposes by the FBI and/or law enforcement personnel and serve as methods for obtaining counterterrorism and investigative data. These cyber products allow law enforcement to query information and develop investigative leads from a variety of source data. FBI personnel as well as task force members from local, state and other federal agencies have access to these tools. Disclosure of the capabilities and/or vulnerabilities of the data that can be collected through use of these tools and in specific situations, could enable criminals to employ countermeasures to avoid detection, thus jeopardizing the FBI's investigative mission. Revealing the names of these

26

products, as well as their capabilities and uses, would be comparable to painting the word

"Police" on an undercover police vehicle. The efficacy of the technique rests on the ability to

mask its identity. Because disclosure would impede the FBI's effectiveness and potentially aid

in circumvention of the techniques if disclosed, the FBI properly withheld this information

pursuant to Coded Category 7(E)-5 on Bates pages 903 and 914.

### Non-Public Portions of Operational Directives

(54)    The FBI withheld information within policy and training documents consisting of

operational directives that guide and instruct FBI employees on the proper use of certain

sensitive FBI procedures, techniques, and strategies for conducting investigations.

Specifically, the information protected under Coded Category 7(E)-6 was located in the FBI's

Domestic Investigations Operations Guide ("DIOG") and the FBI's Counterintelligence Division

Policy Directive and Policy Guide ("CDPG").[12] In the course of providing these instructions,

these guides also identify the procedures, techniques, and strategies at issue. Specifically, the

protected information falls within both subtypes of 7(E): law enforcement techniques and

procedures, and law enforcement guidelines. Releasing such information would not only provide

sensitive, unknown investigative techniques, it would also reveal sensitive unknown uses of

these specific techniques and procedures. If released in its entirety, the information would

provide individuals and entities with a unique look inside the FBI's law enforcement and

national security "playbooks." For example, on Bates page 383, certain specific information is

protected under the disclosed heading, "Members of the News Media," the disclosed subheading

---

[12] The DIOG's purpose is to standardize policy so that criminal, national security, and foreign intelligence investigative activities are accomplished in a consistent manner, whenever possible (e.g., same approval, notification, and reporting requirements). In addition to the DIOG, each FBIHQ substantive Division has a policy implementation guide that supplements the DIOG. The CDPG is the Counterintelligence Division's policy implementation guide.

"Approval Requirements," and a disclosed sub-subheading, "Exigent Circumstances." On Bates page 389, certain specific information is protected under the disclosed subheadings, "Community of Interest Information," "Contact with Members of the News Media by a [Redacted]," and "Emergency Circumstances." Armed with such information, criminals could predict how and when the FBI will respond to certain suspicious/criminal activities, and the investigative techniques the FBI is most likely to employ in those situations. This would afford criminals the abilities to preemptively modify their behavior in a manner that avoids detection and to disrupt the very investigative procedures, techniques, and strategies that these FBI guides are intended to protect. Consequently, the release of this information in full would increase the risk that targets of these national security investigations could develop countermeasures and avoid detection by interfering with the FBI's ability to effectively use these important national security law enforcement techniques. A release of this information would allow individuals and entities seeking to commit crimes or threaten the United States' national security an opportunity to avoid detection and circumvent the law. Thus, the FBI properly withheld this information pursuant to Coded Category 7(E)-6 on Bates pages 377-378, 383-384, 387-389, 394, 396, 406-407, 410-417, 421, (FBI's DIOG) and 1016-1020 (FBI's Counterintelligence Division Policy Directive and Policy Guide). At times, this information is withheld in conjunction with FOIA Exemptions 1 and/or 3.

### Law Enforcement Techniques Utilized in the Specific Context of National Security Investigations

(55)    Pursuant to FOIA Exemption 7(E), the FBI has withheld on Bates pages 1017, 1020, and 1052-1053 the identification and detailed description (circumstances of use, approval levels, pre-requisites, etc.) of sensitive law enforcement techniques that the FBI uses in National Security investigations to obtain invaluable intelligence information. While the techniques may

be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques, to include the specifics of how and in what setting they are employed, is not generally known to the public. Revealing the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material would effectively reveal specifics of how, and in what settings, the techniques are employed. As a result, criminal targets would be better able to avoid detection by developing countermeasures to circumvent the ability of law enforcement officials to use the techniques, thus rendering them useless to the FBI and other law enforcement agencies. Revealing details about these sensitive law enforcement techniques would compromise a crucial means of collecting intelligence information and severely hamper the FBI's law enforcement efforts to detect and apprehend individuals who seek to violate the United States criminal and national security laws; therefore, this information is appropriately exempt from disclosure pursuant to Coded Category 7(E)-10. At times, this information is also withheld in conjunction with FOIA Exemptions 1 and 3.

### Specialized FBI Sections, Units, Squads, and/or Singular Roles within the Specialized Section/Unit/Squad

(56)    The FBI asserted Exemption (b)(7)(E) on Bates pages 1016, 1018-1020, and 1052 to protect techniques and procedures specifically pertaining to the names, numbers, and/or alpha designators of certain sensitive FBI squads and units. In some instances, the existence of these particular squads and units is not known to the general public. In other instances, the use of the known unit in the context of a particular type of investigation would be revealing in and of itself (Bates page 1016). Revealing their names, numbers, and alpha designators would reveal their existence, as well as the level of focus the FBI has applied to certain areas within the realm of counterterrorism. Providing criminals with the level of focus the FBI is applying to a certain

type of terrorist activity would provide terrorists with an idea as to where the FBI is focusing its limited resources. Terrorists could then plan and structure their activities in a manner that avoids detection and disruption by the FBI, making it easier for them to circumvent the law. Therefore, this information has been redacted pursuant to Coded Category 7(E)-11.

## SEGREGABILITY

(57)   During the processing of Plaintiffs' request, each responsive page was individually examined to identify non-exempt information that could be reasonably segregated from exempt information for release. All segregable information has been released to plaintiffs. As demonstrated herein, the only information withheld by the FBI consists of information that would trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA exemptions.

(58)   As discussed in paragraph 21 *supra*, Plaintiffs are challenging only 52 pages of partially withheld FBI documents and the FBI's search in regard to part 1.e of the narrowed request.[13] The FBI previously segregated for release all non-exempt information. The FBI conducted a secondary review and determined material that was withheld was appropriately withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages. The protected material was either exempt itself or was so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible without revealing exempt information or leaving nothing but meaningless words or sentence fragments.

---

[13] Plaintiff has challenged the FBI's assertion of exemptions on partially withheld Bates pages 12, 34-35, 40, 377-378, 383-384, 387-389, 394, 396-422, 903, 905, 909, 914, 1016-1020, 1033-1034, 1052-1054, 1065-1067.

# CONCLUSION

(59)    The FBI conducted a reasonable search for records responsive to Plaintiffs' FOIA request. The FBI processed (with the assistance of other agencies where necessary) and released all reasonably segregable information from the responsive records to Plaintiffs. The FBI properly protected and withheld information pursuant to FOIA Exemptions 1, 3, and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), and (b)(7)(E).[14]

(60)    The FBI has carefully examined the responsive records and has determined (at times, with the assistance of other agencies) that the information withheld from Plaintiffs, if disclosed, would reveal information that would cause serious damage to national security, would violate federal statutes governing release of information on national security operations, would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement and national security investigations or prosecutions that could reasonably be expected to risk circumvention of the law. After extensive review of the responsive records, the FBI determined that there is no further reasonably segregable information subject to the FOIA to be released, without revealing exempt information.

---

[14] Although the FBI also properly withheld information pursuant to FOIA Exemptions 6 and 7(C), those exemptions are not challenged in the narrowed subset of records selected by the Plaintiffs. Exemptions 6 and 7(C) were asserted on Bates pages 395, 1052, and 1065 to withhold unique employee identifiers within the classification stamps on each of these pages. On Bates page 1054, the names and identifying information (singular positions, telephone numbers, and e-mail addresses) of DOJ employees is withheld.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through G attached hereto are true and correct copies.

Executed this 22nd day of January, 2020, in Winchester, Virginia.

Michael G. Seidel
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation